UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DARYL JOYCE, JR.,

       Petitioner,

v.                              Case No. 3:13cv330/MCR/CJK

SECRETARY, DEPARTMENT OF
CORRECTIONS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 1). Respondent filed an answer, submitting relevant portions of the state court record. (Doc. 12). Petitioner replied. (Doc. 15). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On March 11, 2010, petitioner was charged by information filed in Escambia County Circuit Court Case No. 10-CF-642, with aggravated battery with a deadly weapon (Count 1) and aggravated assault by threat with a firearm (Count 2).  (Doc. 12, Ex. A, p. 1).[1]  Petitioner went to trial (Ex. B), and a jury found him guilty as charged.  (Ex. A, pp 36-38).  By judgment rendered August 25, 2010, petitioner was adjudicated guilty and sentenced to concurrent terms of ten years imprisonment on Count 1 and five years imprisonment on Count 2.  The sentence on Count 2 included a three-year mandatory minimum.  (Ex. A, pp. 54-64).  The Florida First District Court of Appeal (First DCA) affirmed the judgment on August 16, 2011, per curiam and without a written opinion.  *Joyce v. State*, 68 So. 3d 238 (Fla. 1st DCA 2011) (Table) (copy at Ex. F).

On February 14, 2012, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. H, pp. 1-22).  The state circuit court struck petitioner's motion with leave to amend.  (Ex. H,  p. 23).  Petitioner filed an amended motion on March 19, 2012.  (Ex. H, pp. 24-50).  The circuit court denied relief without an evidentiary hearing.  (Ex. H, pp. 51-113).  The First DCA per curiam affirmed without a written opinion on December 7, 2012.  *Joyce v. State*, 103 So. 3d 148 (Fla. 1st DCA 2012) (Table) (copy at Ex. I).  The mandate issued January 3, 2013.  (Ex. J).

Petitioner filed his federal habeas petition in this court on May 20, 2013.  (Doc. 1).  The petition raises two claims of ineffective assistance of trial counsel.

---

[1] All references to exhibits are to those provided at Doc. 12, unless otherwise noted.  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Respondent asserts that both claims fail because the state courts' rejection of them was not contrary to, or an unreasonable application of, clearly established federal law, and did not involve an unreasonable determination of the facts. (Doc. 12, pp. 11-18).

## APPLICABLE LEGAL STANDARDS

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.   *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably

extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently

declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

<u>Clearly Established Federal Law Governing Claims of Ineffective Assistance of Trial Counsel</u>

In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Id.*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* at 690, 104 S. Ct. at 2066.  "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. —, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  *Id.* at 694, 104 S. Ct. at 2068.  "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d

284 (2010).   "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 562 U.S. at 105.  As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

## DISCUSSION

Ground One           "Trial Counsel Was Ineffective By Failing To Object, And Move For Mistrial Due To Numerous Instances Of Prosecutorial Misconduct; In Violation Of Clearly Established Federal Case Law And Contrary To Petitioner's Federal Constitutional Rights Too [sic] Due Process And Effective Assistance Of Counsel." (Doc. 1, p. 4).

Petitioner claims the prosecutor made remarks during closing and rebuttal arguments which:  (1) improperly urged the jury to convict him based on his bad character, (2) improperly bolstered a State witness' credibility and (3) improperly shifted the burden of proof to petitioner to establish his innocence.  (Doc. 1, pp. 4-10).  Respondent asserts that petitioner is not entitled to federal habeas relief, because the state court's rejection of this claim is not contrary to, or an unreasonable application of, the *Strickland* standard.  (Doc. 12, pp. 10-15).  Petitioner replies that the state court unreasonably applied federal law, and that he is entitled to habeas relief.  (Doc. 15, pp. 1-4).

A.    State Court Decision

Petitioner presented this claim to the state courts as Ground One of his amended Rule 3.850 motion.  The state circuit court denied relief after identifying and explaining the *Strickland* standard, as follows:

> As a general principle, to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that 1) counsel's performance was deficient and 2) there is a reasonable probability that the outcome of the proceeding would have been different had counsel not been deficient.  See Torres-Arboleda v. Dugger, 636 So. 2d 1321, 1324 (Fla. 1994), construing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).   Thus, there is a two-part inquiry:   counsel's performance and prejudice.

> > In reviewing counsel's performance, the court must be highly deferential to counsel, and in assessing the performance, every effort must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

> Spencer v. State, 842 So. 2d 52, 61 (Fla. 2003), quoting Strickland, 466 U.S. at 689.

> > Defendant bears the burden of showing that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.  There is a "wide range of professionally competent assistance" that passes this constitutional muster.  Bertolotti v. State, 534 So. 2d 386, 387 (Fla. 1988).  Furthermore, there is a "strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of *reasonable professional judgment* with the burden on claimant to show otherwise."  Blanco v. Wainwright, 507 So.

…

2d 1377, 1381 (Fla. 1987), quoted in Bertolotti, 534 So. 2d at 387 (emphasis added).

Even if Defendant's counsel fell below such standards, Defendant would not automatically prevail. Defendant must also meet the prejudice prong of the Strickland test. For Defendant to prevail on this point, he must demonstrate that there is a "reasonable probability that, but for the deficiency, the result of the proceeding would have been different." Spencer, 842 So. 2d at 61. Moreover, "[a] court considering a claim of ineffective assistance of counsel need not determine whether counsel's performance was deficient *when it is clear that the alleged deficiency was not prejudicial*." Torres-Arboleda, 636 So. 2d at 1324 (emphasis added). In other words, Defendant must demonstrate a "probability sufficient to undermine confidence in the outcome." Spencer, 842 So. 2d 61. Indeed, "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S.Ct. 770, 792 (2011). With these principles in mind, the Court will address Defendant's claims.

(Ex. H, pp. 52-53) (footnote omitted). The state court denied relief on Ground One, as follows:

### Ground 1: Failure to Object to Prosecutorial Misconduct

In his first ground, Defendant alleges three categories of misconduct from the State in closing and rebuttal arguments: making improper statements regarding Defendant's character, bolstering the victim's testimony, and shifting the burden of proof to the defense. In order to be successful in an allegation that counsel was ineffective for failing to object to a prosecutor's improper arguments, Defendant must show two things:

first . . . that the comments were improper or objectionable and that there was no tactical reason for failing to object. Secondly, . . . that the comments deprived the defendant of a fair and impartial trial, materially contributed to the conviction, were so harmful or fundamentally tainted as to

require a new trial, or were so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.

Stephens v. State, 975 So. 2d 405, 420 (Fla. 2007) (internal quotation omitted).   Therefore, this Court must first determine whether the comments to which Defendnat objects were improper.

When deciding whether the comments were improper, the Court must also consider that "the proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." Gonzalez v. State, 990 So. 2d 1017, 1028-1029 (Fla. 2008) (internal citations omitted). See also Dessaure v. State, 891 So. 2d 455, 468 (Fla. 2004) (recognizing that "[c]losing argument presents an opportunity for both the State and the defendant to argue all reasonable inferences that might be drawn from the evidence").

## CHARACTER

Defendant alleges first that counsel should have objected to the following statements that improperly called Defendant's character and propensity to commit bad acts into question:  1) "[Defendant and his brother] have gotten arrested multiple times together, doing things together;" 2) "He and his brother, they get arrested together;" 3) "[T]hese two run around, get charges together;" 4) "[Defendant was] trying to be Mr. Big Shot;" and 5) "I mean, how low can you get?"

With regard to the first three statements, the Court does not find that Defendant has shown deficiency of counsel or prejudice.  Both Defendant and his brother took the stand to testify on Defendant's behalf.  Both men had been previuosly convicted of felonies and of theft crimes.   Each man testified to the number of times he had been convicted of such crimes.  Therefore, the fact that both Defendant and his brother were convicted felons was already before the jury, and the prosecutor was not barred from commenting on such testimony.  The

fact that the prosecutor stated that the two men got arrested "together" does not change the analysis.  Defendant's brother had specifically testified that he and his brother had previously been arrested toegether. Nothing in the first three prosecutorial statements was erroneous or should have caused counsel to object.  Even had these statements been erroneous, in light of Defendant's testimony and that of his brother, Defendant has failed to show how such statements prejudiced him. These statements do not entitle Defendant to relief.

With regard to the statements referring to Defendant as a "Big Shot" and Defendant's doing something "low," Defendant has not shown how either of these statements called his character into question or was otherwise improper.  Defendant has not shown that either statement was anything other than a reasonable inference that coud have been drawn from the evidence adduced at trial.  In context, the prosecutor had recounted for the jury the fact that Defendant had no motive to pick a fight with the victim but had chosen to pull out a gun and hit the victim with the gun when the victim turned his back.  The prosecutor then invited the jury to draw the conclusions that such behavior was simply an attempt by Defendant to be a "Big Shot" and that his actions were particularly despicable.  Suggesting such conclusions to the jury based upon the evidence adduced at trial was neither improper nor objectionable, and counsel was not ineffective for failing to lodge a meritless objection.

## BOLSTERING

Second, Defendant alleges that the following statements by the prosecutor in her rebuttal argument constituted bolstering of the victim's testimony or vouching for his credibility:  1) ""He doesn't have a motive to come make up this story about getting hit by a gun by this guy;" 2) "There's no reason for him to, you know, go through all of this process;" and 3) "They have no motive to make this up against him."

It is well settled that "an attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any

other relevant issue so long as the argument is based on the evidence." Miller v. State, 926 So. 2d 1243, 1254-55 (Fla. 2006). Such argument does not alter the fact that it is the jury's province to determine which testimony or witnesses should be believed. Id.

The prosecutor's comments each related specifically to evidence that had been adduced at trial. The evidence was unrefuted that only three people at the scene had known someone from the other group prior to the altercation. The victim and his friend both were acquainted with the victim's ex-girlfriend, Amber Rhodes, and the testimony was that there was no bad blood between the victim and Ms. Rhodes.

The prosecutor's comments, in context, therefore, were not impermissible comments bolstering the victim's credibility. Rather, the prosecutor simply reiterated portions of the evidence and pointed out a reasonable conclusion that could be drawn from that evidence – that the victim lacked a motive to fabricate his story. The Court finds that the prosecutor's arguments were founded soundly on the evidence adduced at trial; hence, arguing that the victim was without motive to manufacture his allegations was a permissible use of closing argument. Defense counsel was not deficient for failing to object to such arguments.

<u>BURDEN OF PROOF</u>

Finally, Defendant challenges the following statements of the prosecutor because Defendant alleges that the statements improperly shifted the burden of proof to Defendant: 1) "In their opening and throughout the trial, the Defense has attempted to make out that there's something going on with Amber Rhodes that, you know, Weston Vowell [the victim] was just so spurned and upset and that gave him, you know, this motive to attack this group of people who he didn't even know . . . . And I would just say that there's been no evidence of that presented whatsoever," and 2) "As far as evidence of redness on the victim's fingers, there was [sic] something preventing Ms. Richards [defense

counsel] from getting this picture in?  If she thinks it's such a great piece of evidence, what's stopping her from getting it in?"

As noted in his motion, Defendant in this case relied on the affirmative defense of self defense.  In such an instance, a defendant

> has the burden of producing or going forward with the evidence.  This burden is procedural in nature. . . . the burden of proving guilt beyond a reasonable doubt never shifts from the state. . . . this standard broadly includes the requirement that the state prove that the defendant did not act in self-defense beyond a reasonable doubt.

Bolin v. State, 297 So. 2d 317, 319 (Fla. 3d DCA 1974) (internal citations omitted).  Hence, Defendant had the initial burden of showing a prima facie case of self-defense.  See Sipple v. State, 972 So. 2d 912, 915 (Fla. 5th DCA 2007).

Whether or not the victim had shown aggression or been involved in an altercation with Defendant was not an element of either crime with which Defendant was charged.  That issue was germane only to whether Defendant's actions were taken in self-defense.  The State, therefore, had no burden to prove anything with regard to aggression; rather, Defendant had the burden to produce some modicum of proof of aggression by the victim in order to support his theory of self-defense.  The prosecutor did not commit error by pointing out to the jury that Defendant had failed to carry his burden in that regard. Both statements, therefore, went to indicating to the jury that the affirmative defense of self defense had not been proven, even to the extent of a prima facie case.  Such arguments did not improperly shift the burden of proof to Defendant.

Additionally, the statment regarding the photograph came in the context of the State's rebuttal argument.  Defense counsel had argued in her closing statement, "Officer Norman told you that she took some additional photos that are not part of the evidence.  She indicated she

had taken a photo of Weston Vowell's left knuckles that showed redness. The State didn't introduce that to you. That's evidence he was involved in a fight."

Prosecutorial arguments that simply respond to an argument made by defense counsel in closing argument are not improper. See Walls v. State, 926 So. 2d 1156, 1166 (Fla. 2006) ("prosecutor's comments are not improper where they fall into the category of an 'invited response' by the preceding argument of defense counsel concerning the same subject"). In this case, the prosecutor's argument regarding failure of defense counsel to introduce a potentially probative photograph was directly invited by the closing argument advanced by defense counsel in which she had argued that the State had failed to submit into evidence the photograph of the victim's knuckles. After a review of these considerations, the Court finds that there was nothing improper about the challenged arguments, and Defendant has not shown entitlement to relief.

(Ex. H, pp. 53-58) (footnotes citing to attached portions of trial record omitted). The First DCA summarily affirmed the circuit court's decision.

B.     Federal Review of State Court's Decision

The "contrary to" prong of the AEDPA standard is not implicated here, because the state court utilized the *Strickland* standard.  Accordingly, the court proceeds to consider petitioner's claim under AEDPA's "unreasonable application" standard.

Florida law governing what is proper prosecutorial argument is essentially the same as the federal due process standard.  A prosecutor may argue both facts in evidence and reasonable inferences from those facts. *See Tucker v. Kemp*, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted); *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984) (holding that the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends

the jury should draw from the evidence).  When the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper.  *United States v. Granville*, 716 F.2d 819, 822 (11th Cir. 1983); *United States v. Johns*, 734 F. 2d 657, 663 (11th Cir. 1984) ("[A]n attorney's statements that indicate his opinion or knowledge of the case as theretofore presented before the court and jury are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence.").

Improper bolstering occurs when "the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony," *Hutchinson v. State*, 882 So. 2d 943, 953 (Fla. 2004); *United States v. Bernal-Benitez*, 594 F.3d 1303, 1313-1314 (11th Cir. 2010) (same).  "The rule against bolstering does not, however, prevent the prosecutor from commenting on a witness's credibility, which can be central to the government's case." *Bernal-Benitez*, 594 F.3d at 1314.

The court has reviewed the evidence adduced at trial and the entirety of the prosecutor's and defense counsel's arguments.  The state court reasonably concluded that petitioner failed to establish deficient performance and prejudice under *Strickland*, because the prosecutor's comments were not improper (whether reviewed under Florida's standard or the federal standard).  *Chandler v. Moore*, 240 F.3d 907, 914 (11th Cir. 2001) (concluding that prosecutor was properly commenting on the evidence, that none of the prosecutor's comments rose to the level of fundamental error and, therefore, that defense counsel could not be deemed ineffective for failing to object).  The prosecutor's comments (1) were based on facts admitted as evidence, (2) merely expressed inferences and conclusions she contended the jury should draw from the evidence (including conclusions about the credibility of witnesses'

testimony) and (3) were not misleading or inaccurate characterizations.  Further, there was no improper bolstering.  *See, e.g., Bernal-Benitez*, 594 F.3d at 1314 (rejecting defendants' claim that the prosecutors' comments during closing argument rose to the level of bolstering; the prosecutors  pointed out the lack of evidence to support the defense arguments that the government witnesses were fabricating their stories, and then drew reasonable inferences from the evidence as to why the government witnesses had no incentive to lie, both of which were permissible; holding that when considered in the context of the entire trial, the comments were a "clearly permissible" attempt to counter the defense strategy of attacking and undermining the credibility of the government's case).  The prosecutor's other comments – about the lack of evidence showing that the victim "was just so spurned and upset and that gave him, you know, this motive to attack this group of people who he didn't even know" – did not impermissibly shift the burden of proof; moreover, any possible prejudice which might otherwise have resulted from the comment was cured by the court's instruction regarding the burden of proof.  Finally, the prosecutor's remarks during rebuttal concerning defense counsel's failure to submit a photograph of the victim's hand was a permissible reply to comments defense counsel made during her closing argument.  *United States v. Rodgers*, 981 F.2d 497, 499-500 (11th Cir. 1993) (concluding that the challenged comments were permissible as replies to comments defense counsel made during opening and closing statements).

Because it is not at all apparent that the state court erred at all, much less erred "so transparently that no fairminded jurist could agree with that court's decision," *Bobby v. Dixon*, — U.S. —, 132 S. Ct. 26, 27, 181 L. Ed. 2d 328 (2011), this court should deny federal habeas relief on Ground One.

<u>Ground Two</u>        "Trial Counsel Was Ineffective For Failing To Call W/Amber Rhodes To Testify On Behalf Of The Petitioner In Violation Of Petitioner's Federal Constitutional Rights and Clearly Established Federal Case Law." (Doc. 1, p. 11).

Petitioner claims defense counsel was ineffective for failing to call Amber Rhodes as a defense witness. (Doc. 11-12). Respondent asserts petitioner is not entitled to federal habeas relief, because the state court's rejection of this claim is not contrary to, or an unreasonable application of, the *Strickland* standard. (Doc. 12, pp. 15-18). Petitioner replies that the state court unreasonably applied the law, and that he is entitled to federal habeas relief. (Doc. 15, pp. 4-5).

A.    State Court Decision

Petitioner presented this claim to the state courts as Ground Two of his amended Rule 3.850 motion. The state circuit court articulated the *Strickland* standard and rejected Ground Two as follows:

**Ground 2: Failure to Call Witness**

In this allegation, Defendant argues that his attorney should have investigated another eye witness to the fight, Amber Rhodes. Defendant alleges that

[t]he witness would've testified that: 1) the Defendant was a friend of hers, who'd been invited to accompany her to her mother's house 2) that upon arrival, her, the Defendant and two other friends encountered her ex-boyfriend and two of his friends who'd been instructed to place a camera belonging to her (Amber Rhodes) in the mailbox, at which time they should have left the premises 3) that during this encounter, her ex-boyfriend (alleged victim) initiated a fight amongst members of the two groups by punching the Defendant's brother, and that it was during this altercation that the alleged victim

retrieved a gun from his vehicle 4) that the Defendant and alleged victim tussled over the gun belonging to the alleged victim, with the Defendant ultimately gaining possession of such and striking the alleged victim with it in self-defense 5) Amber Rhodes would have also testified to the fact that she'd just ended a relationship with the alleged victim and that after placing the camera in the mailbox, he was no longer a welcome guest.

Defendant alleges that such testimony would have bolstered his version of events, including that he was acting in self-defense when he hit the victim.

Many of the facts that Defendant argues should have been elicited from this witness were already in evidence. The defense's first witness, Arion Goble, testified that the victim and his friends were to deliver a camera to a certain mailbox and that Defendant, Defendant's brother, Ms. Rhodes, and Mr. Goble were riding together to pick up the camera. The victim testified that he and Ms. Rhodes had been in a relationship that was just ending and stated that, when Ms. Rhodes and her friends arrived, the victim and his friends met them on the street. Mr. Goble testified that the victim had "r[un] up on" Defendant so that Defendant had to defend himself. Defendant himself admitted on the witness stand that he had hit the victim with a gun. Therefore, the only facts not yet in evidence to which Defendant alleges that this witness would have testified were the facts that the victim hit Defendant's brother, retrieved a gun from the car, and fought with Defendant over the gun.

The record is clear, however, that Ms. Rhodes was not present during at least part of the altercation. According to Defendant's testimony, Ms. Rhodes had left at some point and had only returned after Defendant had run away, disposed of the gun, met back up with his friends, and was walking back toward Defendant's house. Although the record is unclear as to when Ms. Rhodes left, Defendant's own testimony clearly indicates that Ms. Rhodes was not present at the end of the altercation. According to Defendant's testimony, the altercation ended immediately after Defendant wrested the victim's gun from him and hit him with it. Mr. Goble similarly testified that "after the guy

fell," Defendant and his friends left the scene.  Therefore, based on Defendant's testimony, Ms. Rhodes could not have testified regarding the circumstances under which Defendant gained control of or struck victim with the gun.

Defendant has not alleged what Ms. Rhodes' vantage point was at the time of the fight or how she would have been able to see the gun beyond both the victim's and Defendant's bodies as they "tussled." The testimony was undisputed that Mr. Goble was only an observer, not a participant in the brawl, but he testified that he had not seen either the victim or defendant with a gun.  Defendant's brother testified that he had seen the victim reach into the car but did not testify that he had seen a gun in the possession of either the victim or Defendant.  Defendant also testified that neither his brother nor Mr. Goble had seen him with a gun. Defendant does not explain how Ms. Rhodes would have been able to see what neither of the other two eye witnesses could see.

The only fact, therefore, that Ms. Rhodes could have added was that the victim had punched Defendant's brother.  The Court does not find counsel deficient for failing to call this witness to adduce this single detail, as whether or not the victim had punched defendant's brother during the street fight was not germane to the ultimate question of whether Defendant assaulted or battered the victim with a gun.[FN 30]

[FN 30]:  Defendant implies, but does not explicitly argue, that the reason for his actions was defense of his brother. However, according to defendant, at the time when the victim punched defendant's brother to begin the altercation, the gun had not yet been taken out of the vehicle and that by the time the gun had been removed from the car, Defendant's brother was fighting the other assailant while Defendant fought the victim.  Id. at 88. Therefore, the details of the initial punch are immaterial to the ultimate question of justifiable use of force.

Moreover, Defendant has failed to prove prejudice.  Even had this witness been called to the stand and testified exactly as Defendant describes, it would not have changed the outcome of trial.  The Florida

Statutes indicate that force may justifiably be used against another in the following situation:

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

Section 776.013 (3), Florida Statute (2010).

According to the facts that Ms. Rhodes would purportedly have included in her testimony, the victim had separated himself from the fight and was reaching into his vehicle; therefore, he was no longer threatening Defendant's brother at the time of the battery. Hence, Defendant could not have had a reasonable belief that battering the victim was necessary to prevent death or great bodily harm to Defendant's brother.

Additionally, Ms. Rhodes['] purported testimony would have been that Defendant had secured the gun from the victim before defendant struck the victim; thus, Defendant had neutralized the threat of harm to himself or his brother from the victim's firearm. Ms. Rhodes['] testimony would have shown that only after Defendant no longer had a reasonable belief of imminent death or bodily harm to himself or his brother did Defendant strike the victim over the head with the gun. Such testimony could not have supported Defendant's claim of self defense. Defendant has not alleged any facts that show that after Defendant had gained control of the gun, he still had any reason to believe that he or his brother were about to come to death or great bodily harm. Defendant has failed to prove either deficiency of counsel or prejudice to his case. This allegation cannot entitle Defendant to relief.

(Ex. H, pp. 59-62) (footnotes citing to attached portions of trial record omitted). The

First DCA summarily affirmed without a written opinion.

B.      Federal Review of State Court's Decision

As with Ground One, petitioner challenges only the state court's application of the two-part *Strickland* test in its resolution of his claim.  The state court had a reasonable basis to conclude that petitioner failed to establish deficient performance and prejudice under *Strickland*.

Ineffective assistance claims based on "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because all allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978).[3]  "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision" that seldom, if ever, serves as grounds to find counsel's assistance ineffective. *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004).

It is not clear from the record why defense counsel did not call Ms. Rhodes as a witness.  If counsel made the decision not to call Rhodes for strategic reasons – if, for example, she spoke with Rhodes and decided that her testimony would not be helpful or that she would not make a credible witness – then this court would not provide relief for such strategic decisions by counsel.[4]  *See Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995).  Second, regardless of whether counsel's performance "fell below an objective standard of reasonableness" by not calling Rhodes to testify,

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[4]This court has no evidence as to what would have been the actual substance of Ms. Rhodes' testimony.  Petitioner's Rule 3.850 motion and federal habeas petition merely contain self-serving statements by petitioner as to what Ms. Rhodes would say once on the witness stand.  Petitioner did not submit any affidavits from Rhodes that explain what she observed, if she spoke with petitioner's counsel, or if defense counsel told Rhodes that she planned to call her as a witness.

*Strickland*, 466 U.S. at 668, the state court concluded, in a well-reasoned analysis of Rhodes' proposed testimony in light of the evidence presented at trial, that petitioner failed to establish a reasonable probability that the outcome of his trial would have been different had counsel called Ms. Rhodes to testify.  The state court's decision to deny petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law.  Petitioner is not entitled to federal habeas relief on Ground Two.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Daryl Lamont Joyce, Jr.*, Escambia County, Florida, Circuit Court Case Number 10-CF-642, be DENIED, and the clerk be directed to close the file.

2.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 17th day of June, 2015.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th CIR. R. 3-1; 28 U.S.C. § 636.

*Case No: 3:13cv330/MCR/CJK*